and Truck Service, LLC. We're just going to wait just a moment. All right, we'll hear first from Mr. O'Brien. Thank you. Good morning. May it please the Court, James O'Brien on behalf of Plaintiff and Appellant Shenae Dawkins. Your Honors, this is an interesting case of a hit and run by a semi-truck and then the truck fled the scene, as hit and run implies. My client, Shenae Dawkins, chased after the truck and got... I think we're familiar with the facts and so I'll get right down to a question that I have. First of all, speaking only for myself, I think that your client preserved the presumption argument, but just barely. I mean, I would... I think it's in there enough to get to appeal, but I would certainly hope that to make the district court's job easier, that this presumption would be more specifically cited before the district court. Do you... I guess, obviously, you think that it was preserved, but why should we... I should say I tentatively think it was preserved. Why do you think that you said enough to preserve that argument at the district court? Sure. Your Honor, I think your analysis is right on. I think that we did preserve it, but we didn't champion the issue as clearly as we should have, but it's still preserved. I think the real key to the preservation is that the presumption is really... The rebuttable presumption is really a reasonable inference, is what I'm trying to say. In other words, it's a rebuttable presumption in Georgia law, but more broadly in Rule 56, it's a reasonable inference that the driver of a commercial vehicle is... You'll probably want to stick with the point about Georgia law, because I'm not sure... If there's not a presumption, then it's hard to see how you put forth enough evidence, perhaps understandably given the lack of information that you received, but speaking for myself, I don't know that there's any evidence to get you there if there's not a presumption. Understood, Your Honor. And I think the other point is that the presumption is found within the case Allen-Cain, Allen-Cain-Chevrolet, I believe. That was cited by the defense, the appellee, and by the court itself, and so that's another instance where the presumption is in front of the court. To address that question, Your Honor. Let me... I have a question. So in your briefing, you point to the defendant as being at fault for the fact that you don't know the identity of the driver, but you didn't take any depositions in this case, correct? That's correct, Your Honor. And you didn't file a motion to compel if you felt that the defendant's discovery responses were inadequate, right? That's correct, Your Honor. And when the defendants filed a motion for summary judgment, which you have said was improperly granted, you did not tell the court, hey, I still need additional discovery, proceed under 5060 or anything of that sort, correct? No, that's correct, Your Honor. Why didn't you? I mean, I saw the email exchange where you said you were going to do a 30B6 depo. Right, where I said that I was unhappy with the discovery responses, and in the normal process of things, the paper discovery, I thought, should produce records of the truck ownership. I understand, but why didn't you follow up? With more than the email, Your Honor? A motion to compel 30B6, a range of tools. Right. Well, I'm not sure how to answer the why didn't I, but I definitely didn't. You would agree it would have been easier for you probably, and better if you had. Yes, oh, absolutely, Your Honor, absolutely, yeah. But especially as we stand here this morning, like, that's the logical. I think in my train of thought, I thought, well, I'd get the driver's name, and then we'd do the driver's deposition, and I wouldn't necessarily need to do a 30B6 just of who holds the record of which driver had which truck. Right, but then you never, but you didn't get the driver's name. Right, it was towards the end of the discovery period, and it was within the discovery period, which is a point that the employees have hammered home a number of times, that we made some discovery requests at the end, but then got an agreement to consent for an extension, which the court granted. So, in other words, the fact that we issued that paper discovery towards the end is rather  You certainly issued the discovery within the discovery period. The discovery period was, in fact, extended, and so I think that shines a little bit more of a light on why were no depositions taken, or why was no motion to compel filed when you didn't get the information that you expected, which included, would have included the identity of the driver. You're right. No, correct, Your Honor, and the point is very, very well taken. I think, you know, in addition to the presumption, I also believe that they haven't met the standard of Rule 56, like Rule 56C1, saying that they have to point to some evidence, or point to a lack of evidence. However, in an instance where their paper discovery says, you know, we don't know, that's not pointing to evidence that the driver wasn't employed by them, or that the driver was employed, but was like off the soapbox. I noticed that some of your discovery requests said, I can't remember the exact term, but did your driver do X, Y, Z, right? And for at least one of them that referred to the driver as your driver, the company said admitted. Do you think that that is a recognition by them that the person was their employee, but they're just still not telling you who it was, or do you think that's something different? I think that's a recognition that it was their employee. Yeah, I think I redefined your unidentified driver, I think, in the definition section, that's like a defined term. So for them to contest that it was their employee, they would have had to object to that statement and say, this unidentified driver was, either wasn't our employee, or we don't have enough information to know whether it was our employee. Do you agree with that? Correct, Your Honor. That's exactly right. I think they denied that, where we said admit that your driver was unlicensed, they denied. And so, we also said admit that your driver flooded the scene and they denied. And so, that's in contrast with the, we can't figure out who the driver is, but we're sure that he has a license, which might be simply an indication that we could deny that because we know we have eight drivers and they're all licensed, and so we don't know who had the truck that day, but we do, we can deny it. Is your firm also representing your client in the Pennsylvania action? Yes, Your Honor. It sounds like you're hopefully engaging in more robust discovery there. Well, we are, Your Honor, except that subpoena was quashed and is now on hold. So, we certainly attempted to, but no longer are we moving forward on that one. And it was quashed because the defense said, well, this case is really still pending here before the 11th Circuit. And do you think that that case, that that case has a chance of, I haven't, let me be clear, I am not suggesting at all that I know the ultimate answer to this case, but do you think that that case, is your argument that that case can continue in tandem with this case in kind of in some form, depending on what happens with this case? Or do you think that the existence of this case eliminates the possibility for that case? That's a good question, Your Honor. That case is only against John Doe, an unidentified driver. It's not against the trucking company or the insurance company. And the nature of the dismissal of John Doe in this case is that the court dismissed that the driver, Sue Esponte, is sort of an addition to the summary judgment motion. I think it made sense that that case, if you don't mind, may I finish this thought? Please, of course. Seeing my time is up. I think there was an odd interplay, and I think when the Fulton County judge effectively stayed that case, I think it makes sense. I wish we could have gone forth with that, but I think it made sense. If this court, and we specifically asked if this court doesn't reverse that this court not reinstate the John Doe driver here, because we would intend to pursue the John Doe driver then in that state of the law. If we did reverse on the John Doe, how, discovery is now over here, correct? Yes. Yes. How would you proceed against a John Doe driver when you, it sounds like, perhaps still don't have a way to find out who it is? Right. So, if the court reversed the entire case and we're back in front with innovation as a defendant, if I understand you correctly, you're correct. I'm not saying that's what we're going to do, I'm just trying to understand your position. Absolutely, Your Honor. In that case, we might then just proceed against innovation trucking to a jury trial in that  But, if the court reversed and only asked the John Doe driver and reinstated just the John Doe driver but not innovation, and that's the thing that we... For purposes of this question, and again, I am not saying this is what we're doing or even that this is what my inclination is, but if we reversed on all three, how can you proceed against John Doe if you don't know who that person is? We could move to open discovery, but if, especially to answer your question, assuming that that is not granted and we cannot, then at that point we can't, we don't know who John Doe is and so then the case is just against innovation. Thank you. Thank you. Thank you. All right. Thank you. Thank you, Your Honor. Mr. O'Brien, Mr. Daley, we'll hear from you next. Thank you and good morning, Your Honor. Excuse me, I'm not... I always like to say I'm not eating candy, it's a throat lozenge because I've had a little bit of a sore throat recently, so pardon me for that. Well, we hope you feel better. One thing I'd like to correct, a misstatement from our brief before I start in arguments, just because I want to be forthright, is I think I said in our brief that our client didn't have notice of the accident until it was served with the lawsuit. At that time, I didn't realize there was a letter that the plaintiff's attorney had sent to our client a couple of months before that in November. How many drivers did your client have at the time of this accident? I'm sorry? How many drivers did your client have at the time of this accident? Exactly at the time of the accident, I don't know off the top of my head. I believe one of the exhibits to the plaintiff's response to our motion for summary judgment was a printout of one of those websites that has all that information for trucking companies, and at that time, it was six. So, there were six drivers that it could have been. Why did your client not pretty easily discern which driver was on duty that day with that truck? Well, to my correction, it was still, it looks like 21, excuse me, from February 21 was when the accident was, November of 22, so almost two years. That was when we had first notice of the accident. Federal regulations, retention requirements for those kinds of documents is only six months, and our client was, at that time, in the process of winding down the business. It is now, in fact, out of business and inactive. And so, you know, we made the request, the client, you know, looked at what they had at the time, and they told us that they just didn't have it. You do look at these answers to the interrogatories, and they are odd. I mean, on the one hand, you're asked, you know, you're asked to admit or deny several things, but one of the things is, sorry, admit that at the time of the incident complained of herein that your unidentified driver was acting within the course and scope of his employment with Defendant Innovation Truck Service LLC response. After reasonable inquiry, innovation lacks information sufficient to admit or deny the allegations in this paragraph. But then, a couple of requests later, admit that your unidentified driver fled the scene of the subject incident, denied. Like, how could you know, how could you know to deny that if you don't know the answer to the other question? Like, it seems, it seems problematic here. I mean, if they had moved to compel, and I were sitting as the magistrate judge, I would find this problematic. I have no better response, Your Honor, than to say that I think you're right, that it should have been phrased differently and better. Well, I mean, you see how it sort of conveys a reasonable inference that you know who it is, and you're just not saying who it is. Well, I don't know that I would agree with you going that far. And that's because I think it's pretty clear, the totality of the responses, I think it's pretty clear that we communicated that we didn't know that information. Well, you didn't have a record of it, perhaps, because the records were no longer available. But ordinarily, discovery, I think, requires doing more than checking to see if you still have the formal files that show the information, perhaps emailing the drivers or checking, you know, other kind of email documents from around that time to see what communications happened, right? I don't know that you can just say, well, the formal records no longer had to be retained, and so therefore, we have no responsibility to figure out who it was. Well, I'm certainly not trying to say that. I'm just offering that as part of the explanation for why, you know, they're winding down a business. They don't have records that, if they had known about it sooner, that they would have had. But it's a small company, just obviously with this number of drivers. It's a sole member LLC. The reason they were going out of business is our point of contact was the former wife of the owner of the company. So you can imagine, you know, what that dynamic was like. I wish I could tell you more specifically exactly what was done. Unfortunately, I just don't know that. You would think it's your client's truck. It's your client's employee. There's an accident. The truck returns to the business, even if you don't have driver logs. Surely, if there was damage to the vehicle, there might be records of that, right? If there was damage, if the driver knew that, you know, a perfectly reasonable explanation for all of this is this was such a low-speed impact. I don't know if the photograph of the damage is in the record, but it was a very low-speed impact. You know, the plaintiff was stopped in a turn lane at a light. The truck came up from behind. I mean, this wasn't a, you know, complete demolition. And, you know, big trucks like that all the time are, you know, in minor accidents like that where they don't even, the driver doesn't even realize. And so that would be a perfectly logical explanation for why the person didn't stop when the plaintiff pulled over. I mean, if it did any damage, you hear the crunch. Anybody who's had somebody hit them knows you're going to hear the crunch. You're going to, I mean, I think you would notice. Well, it seems unbelievable to me that you wouldn't notice. And I don't want to stray too far because this is obviously not stuff in the record, Your Honor, but yes to the plaintiff, perhaps, with that kind of a car. But these kind of trucks, there's no crunch, you know, for a, you know, There is a crunch. It's maybe to the other car, but there is a crunch. Well, I mean, I took that, I took your question to mean as a sound, something that the driver would perceive. Yes. Well, the sound is generally loud enough that everybody around who hears the, everybody who's in the area will hear the crunch. I mean, it's not something that only the person driving the crunched car hears. I just don't, my experience with this tells me that that's not always true for these types of trucks, these types of drivers. But I wanted to make one thing clear to Judge Branch's question. The premise of it is we don't concede that the driver was our client's employee either. Where's the report of a stolen truck? There isn't one. Well, what's the other option? Well, there's plenty. Maybe it was our client's employee and he was using the truck for some personal business. Maybe he let a friend borrow it. So given the presumption under Georgia law, which I suppose is designed to deal with just that sort of contention, your client was responsible for putting forth evidence to that effect. And I don't see any evidence to that effect. Not as to the question of employment. The presumption is only with respect to course and scope of- But you didn't deny employment. The, as we discussed, several of the interrogatories referenced your employee and were admitted. Well, again, I wish I could change some of the finer details about that. I was like, both sides may wish they could change some of the finer details of what happened below, but we are where we are. Yeah, this is not the model case, admittedly. That's for sure. But as I said before, I think there's enough else in those responses so that there should have been no confusion. And in fact, the plaintiff has had no confusion about that matter because they've never made the argument that you're making now. Well, I don't understand from any of the papers that anyone ever thought until now that your client was even arguing that it wasn't their employee. I mean, I don't know why they would make such contentions if they didn't think that you were even pushing back on that. I mean, we did say in our summary judgment brief that we denied that it was, it meaning innovation, was acting buyer through their employees. Well, sure. But that's vicarious liability. I mean, that's a different legal doctrine. Well, true. And if it's not the employee, or in this case, it's really a contractor. But no denying that you have vicarious liability for your employee's actions is different than saying they're not your employee, right? Well, it's sort of one in the same, I think, because if they're not an employee...  It could be the same, but it's not necessarily the same. It's broader than that. And it's not really specifically saying it's not your employee. You're saying that even if it was our employee, it's, you know, they weren't acting within the scope of their duty. You know, they were off on a frolic or whatever, right? True. I mean, that's a possibility, a possible argument, sure. But the presumption, though, does only apply in the case law. The Georgia case law is, I think, relatively clear on that. And that, therefore, you can't just assume the employment of the person at issue. And again, I keep falling back into employment language. Our client's drivers were all contractors, but that's not a germane point under the federal regulations. The contractors get treated the same. So I just want to be clear about that, but I didn't want to misstate what our client's drivers were. So when I see the statement of issues in your brief, the first question is whether Dawkins is entitled to a presumption that the unknown driver was employed by Innovation Truck Service and was acting within the course or scope of the employment. Do you think she's arguing for a presumption that the driver was your employee or just that that wasn't in contention? Well, I mean, again, there is no presumption of employment.  So the presumption would only be for the matter of course and scope. Right. So I'm not, I guess I'm not clear on exactly the question then. I mean, I guess it just doesn't seem to me that the employee, the specific question, was this an employee, was litigated at the district court. Seems like lots of other things were, but not that. So I guess I'm not sure why that contention is being made here. I mean, I guess you also didn't admit that it was a truck, right? But I don't think there's any dispute that a truck was involved. So why isn't that essentially the same? Well, I mean, it's true that the district court did not rule on that issue. And so here, we were responding to their arguments, which was the presumption argument. And so, but the statement from this Alan Cain's case, the employment question is necessarily a part of the whole thing. Because you don't get to the course and scope presumption until you've established that there was an employee at issue. And so just that threshold part of that whole principle is lacking here. What I think this case boils down to in the way that it's been presented and litigated is that, you know, the plaintiff has presented no evidence of anything. The only evidence that there is was our client's admission that it owned the truck and the trailer. But I don't think that's enough to satisfy the standard, which is when presented with a motion that argues no evidence, then the plaintiff's obligation is to come forward with concrete affirmative evidence. They've not done that. Maybe a scintilla is our admission of ownership of the truck. But that's not enough under the federal standard. And importantly, ruling in the plaintiff's favor on that issue would be contrary to the Georgia substantive law, which is that ownership of a vehicle by itself is not enough to establish the owner's liability. And so we have a case from the Middle District of Georgia that I wanted to just bring to the Court's attention as an example of how this could have been established in the case of an unknown driver. This is Judge Royal in Macon that mentioned that there was a proximity search done with the Omnitracks log system and SmartDrive camera system that gave longitude and latitude location within miles of each of its drivers. That showed that this one particular driver was traveling in close proximity to the accident site, things like that. And I'm not suggesting that's either required, those specific things. I'm suggesting simply that had the plaintiff not waited almost two years after the accident... Do you have a copy of that case for the plaintiff? Uh, he can have mine. Well, you're not supposed to present a new case here. Okay, I'm sorry then. I apologize for that. I can give the citation for it. It's 2024 Westlaw 1361873. And is there a reason why this is only first coming to your attention now? Uh, I just did more research in preparation for this. As I noted, you know, our response, our brief was based on their argument, which was pretty narrow. And so I've just anticipated questions. And that was one issue that I thought the court might be interested in. And so I thought I would try to find an example of the type of evidence that would suffice to identify a driver that's otherwise unknown. All right, thank you. Um, and then the last thing I'd like to just leave the court with real quick is, you know, ruling in favor of the plaintiff essentially eviscerates the burden, you know, process here. Their burden is to provide evidence of all these elements. They haven't done it. And so the court should affirm the district court. Thank you. All right, thank you. Mr. O'Brien, you have five minutes. Thank you, Your Honor. But let me ask you, what evidence could we rely on that you presented to find that you survive summary judgment? Sure. Yeah. Thank you, Your Honor. The evidence is what's contained within the paper discovery requests coupled with the Alan Kane presumption. Right. But if the presumption isn't that the driver was employed by the trucking company, but only that once you identify the driver, the driver was acting within the scope of his duties, how does that help you? Well, for liability, he doesn't have to be a W-2 employee in the traditional sense. It is, I believe that police conceded as the federal motor carrier standard. One can be an independent contractor, but still operating.  But let's say it was, let's say it turns out it was an employee's brother who was borrowing the vehicle. That, I mean, if there were evidence to that effect, then the presumption would not apply, right? That would overcome the presumption because it's just rebuttable. Your Honor, the presumption though is that it's not his brother Well, the presumption is once we know who the driver is, that they were acting within the scope, right? It's not that whoever the driver was, they must have been employed by the trucking company. Or maybe it is, and I'm mistaken. And if I am, I want you to clear that up for me. That's why I'm asking. Well, in all honesty, I haven't really done a deep enough dive. So I hope I'm not mistaking the case. But my understanding of the presumption is that the person in the front of that vehicle, that commercial vehicle, is rebuttably operating in the course and scope of his or her employment. Right, but the problem is, right, that the driver is acting within the course and scope of his employment. If the driver is employed by, and maybe this is just something we have to figure out on our own, but what I'm trying to figure out is whether the presumption is limited to once you identify the driver, they are acting within the scope of their employment. Or whether it's broader than that, and that whoever is driving is employed by the company and is acting within the scope. Do you understand what I'm asking you? I believe so, Your Honor. And I believe it is the second, that whoever is driving is operating at the instruction of the owner of the vehicle. And what is the authority that you would rely on for that? It's Allen Cain and IBM. It's spelled out International Business Machines, and it's cited within my brief. And there's a number of cases that support that, but I think those two. I'm going to be candid about a concern I have. Which is that it appears possible that your firm anticipated that this case was so open and shut that there would be an insurance settlement. And then through a recalcitrant attitude and discovery, the other side managed to create a complete absence of evidence. And then there was no follow-up on that. I haven't seen very many cases that have this little evidence at the trial level. So I'm still not, I guess what I'm hearing is, you think that you survive summary judgment because you have evidence that the accident happened, right? Yes, Your Honor. And evidence that it was a truck owned and operated by this particular company, right? Yes, Your Honor. And there's some sort of implied recognition in their very minimal discovery responses that it was an employee of theirs driving, correct? Yes, correct, Your Honor. And that under Georgia law, there's a presumption that that employee was operating within the scope of their employment. Correct. And that's all, right? Correct. Now, maybe that's enough. I don't know, I'm not the trial judge considering this, but would you agree that most cases would have substantially more evidence than that? 100% agree. Thank you. And may I just point, it has nothing to do with anticipating settlement. And instead, just about, you know, cases not getting worked up, right? But it has nothing to do with thinking that that would be the path to settlement. Quite the opposite, Your Honor. So, I'm just looking at Allen Keynes, and I'm not sure that Allen Keynes can get you there because in that case, it was known who the driver was. And the only real question was whether they were acting within the scope of employment. You mentioned international business machines as well. Was that right? Yes, Your Honor. I'll have to take a look at that one separately, but... I'm pretty sure I'm saying the right one. All the cases on which we rely are definitely in the brief. But I don't see IBM. It's okay. I'll go back and I'll check it again.  I see my time is up. May I just really quickly address that Middle District of Georgia case? I don't know the case, but if you don't mind, just a real quick thought. I had another case where proximity search was done, and that was the key. Is that another new case? No, no. This is the case that was... Right, but in response, are you citing another new case? Oh, no, Your Honor. Just the case that I worked, and I wanted to comment on what a proximity search was. It would be something done by the trucking company, not something available to the public. All right. Thank you very much. We'll be in recess for the day. Thank you.